Sutherland, J.
The application is for a mandamus to the commissioners of the new county court house, or to the comptroller, or to both.
If the mandamus goes to the commissioners, the application is that it goes to them commanding them to pay the relator or surviving partner of the late firm of J. B. & W. W. Cornell, thirty-four thousand seven hundred and twenty-five dollars and forty-eight cents, with interest thereon from December 7, 1869, out of the sum of two hundred thousand dollars heretofore placed to the credit of the commissioners by the comptroller, pursuant to section 7 of the act of April 19, 1871, or commanding the commissioners forthwith to issue their requisition upon the comptroller, requiring him to pay over to the relator the said sum of thirty-four thousand seven hundred and twenty-five dollars and forty-eight cents, with interest as aforesaid. The application is made upon three several and distinct notices of motions for a mandamus founded upon one and the same affidavit of the relator. The case made by *77 this affidavit, as briefly as is consistent with perfect clearness stated, is this :
The relator is the sole surviving partner of the late firm of J. B. & W. W. Cornell, manufacturers of iron for building in the city of New York. By the act of April 10, 1861, the board of supervisors of the city of New York were authorized to direct and superintend the construction of a court house on certain lands in the city of New York, which, by the act, they were authorized to take for that purpose.
Under and in pursuance of said power, the board of supervisors, on November 17, 1863, entered into a contract with the said firm of J. B. & W. W. Cornell (a copy of which and of the specifications therein referred to is annexed to the affidavit) in and by which the said firm agreed to furnish and deliver certain work, labor, and materials mentioned in the contract and the specifications thereto annexed.
That besides work, labor, services and materials furnished and delivered by the said firm prior to July 7, 1868, for which bills had been rendered, audited by 'the board of supervisors and paid by the comptroller, the said firm, under and in pursuance of the contract, furnished and delivered in and towards the erection, and construction, and completion of the said court house, work and materials to the amount of sixty-five thousand five hundred and ninety-nine dollars and eighteen cents, the items thereof being contained in a certain bill which had been rendered to and audited by the board of supervisors, a copy of which bill is annexed to the affidavit.
All the items contained in said bill are correct, and were actually and in fact furnished and delivered in and towards the construction of said court house, were necessary for and were applied to the use of said court house; and the prices charged in said bill therefor are *78 just and reasonable, and the prices to be paid therefor by the terms of the contract.
Said bill was duly verified, and certified by the superintendent of the construction of said court house to be just and correct, and according to the contract.
The said bill, with the said verifications and certificate, was rendered to the board of supervisors, and subsequently duly audited and allowed by said board at a meeting held on or about July 5,1869. The action of the board of supervisors was subsequently approved by the mayor of the city of Hew York, as appears by the certificate of the clerk of the board of supervisors, a copy of which is annexed to the affidavit.
The said bill was subsequently examined by James Watson, then county auditor, and found correct, as appears. by his indorsment on the bill on file in the office of the comptroller, a copy of which indorsement is annexed to the affidavit; thereupon payment of said bill was demanded of the comptroller, and on December 6, .1869, the sum of thirty-two thousand seven hundred and ninety-nine dollars and fifty-nine cents was paid on account of said bill to the firm of J. B. & W. W. Cornell by a warrant on the county treasurer, drawn by the Hon. R. B. Connolly, comptroller, and duly signed and countersigned, as provided by law.
When such payment was made, there was due and owing upon said bill sixty-five thousand five hundred and ninety-nine dollars and eighteen cents, with interest thereon from July 5, 1869, to December 6,1869, amounting to one thousand nine hundred and twenty-five dollars and eighty-nine cents, making in the aggregate sixty-seven thousand five hundred and twenty-five dollars and seven cents from which, deducting the payment of thirty-two thousand seven hundred and ninety-nine dollars and fifty-nine cents, there is remaining due and unpaid on account of said bill thirty-four thousand seven hundred and twenty-five dollars and *79 forty-eight cents, with interest thereon from December 6, 1869.
By acts of the legislature, passed in 1862,1864,1865, and 1866, more than two million six hundred thousand dollars in the aggregate were directed to be raised by tne board of supervisors of the county of New York, by tax or loan, or by the issue of stocks, to be applied, by or under the provisions of the acts, to the erection and construction of said court house; and the money so raised was directed by the acts to be paid by the comptroller on bills for work and materials furnished to said court house, audited and allowed by the board of supervisors. The sums of money directed by these acts to be raised were raised in the manner directed by the acts, and received by the comptroller for the purpose provided in the acts.
By an act passed April 25, 1867, the said board of supervisors were directed to raise the further sum of eight hundred thousand dollars for the completion of said court house, which further sum was raised by tax and received by the comptroller for the purpose provided in the act.
By an act passed June 3, 1868, the comptroller of the city of New York was authorized to raise, on the stock of said county, the further sum of eight hundred thousand dollars for the completion, fitting up, and furnishing of the said court house, which further sum of eight hundred thousand dollars was raised and received by the comptroller for the purpose mentioned in the act, and was by the act to be paid by the comp-roller on bills audited and allowed by the board of supervisors. By an act passed May 12, 1869, the said comptroller was directed to raise on the stocks of the said county the further sum of six hundred thousand dollars for the completion, fitting up, and famishing the said court house; and by said act it was provided that the money so raised should be paid by the comp- *80 ¿roller on bills audited and allowed by the board of supervisors ; and the said further sum of six hundred thousand dolíais was raised and received by the comptroller for the purpose in the act mentioned.
The relator and affiant is informed and believes that at the time of the auditing and allowance of the said bill by the' board of supervisors as aforesaid on July 5, 1869, and at the time of the demand for the payment thereof made on the comptroller as aforesaid, there was remaining in the hands of said comptroller of the said above-mentioned appropriations, or some of them, applicable to the payment of said bill, a sum of money far more than sufficient to pay the said bill in full, and that it thereupon became, and has ever since been, and is now the duty of the said comptroller to pay the said bill in full.
After the said payment on account of said bill on December 6, the relator and affiant called at various times on the comptroller, with reference to the payment of the balance due on the bill, and the comptroller on each of the occasions promised that he would pay the balance.
By an act of the legislature, passed April 26, 1870, the mayor of the city of New York was authorized to appoint four commissioners, and by such act it was provided that upon the appointment of said commissioners, all powers of the board of supervisors over the erection of said court house should cease ; and by the said act, the said commissioners were given the power to superintend and complete said court house for a sum not exceeding six hundred thousand dollars, which amount the comptroller was authorized and directed to raise on stock of said county of New York.
After the passage of said act in the year 1870, the said mayor appointed Thomas Coman, Michael Norton, James H. Ingersoll, and John J. Walsh such commissioners, who accepted such appointment, and have *81 ever since been and are such commissioners ; and the relator and affiant is advised and believes that such commissioners, by virtue of said act and appointment, became and are the successors to the board of supervisors with reference to the construction and completion of said court house, and all contracts made therefor and work done thereon.
The said sum of six hundred thousand dollars was raised as directed by the said act, and was received by the comptroller for the purposes mentioned in the act. The relator and affiant called upon the said comptroller after the passage of said act, and in the spring of 1870, and the comptroller told him that the balance due on said bill should be paid by him (the comptroller) out of said last-mentioned appropriation; and afterwards, in the summer of 1870, the relator and affiant called on the comptroller, and was then told by the comptroller that as soon as W. Watson, the chief clerk of the comptroller, got to town, which would be in about ten days, the balance due on said bill would be paid, either with bonds or in cash.
The relator and affiant (and here I quote the words of the affidavit) is informed and believes, that large amounts of the last-mentioned appropriation have been paid by the said comptroller on alleged claims for work done and materials furnished to the said board of supervisors, upon or with reference to the said court house, prior to the passage of the said act of April 26, 1870, and prior to the appointment of the said commissioners, but subsequent to the auditing and allowance of the said bill of J. B. & W. W. Cornell on July 5, 1869, and that said payments, or some of them, were made by the said comptroller without the proper vouchers therefor, and in violation of law; that among-such payments are the following payments (as appears-by entries in the books of the said comptroller), which payments were made to one Andrew J. Garvey, at the *82 following dates, alleged in said entries to have been done at the following times:

Date of Payment. Character of Work. Date on which Amount

1870. Work was Done. Paid.
May 6..Paid for plastering in court house................Dec. 4,1869.. $46,025.67
May 14.. Paid for plastering and mason work in court house. Dec. 2,1869.. 45,355.92
May 14. .Paid for painting and decorating in court house . Dec. 22,1869.. 44,255.85
May 21..Paid for painting and decorating in court house . Dec. 21, 1869.. 44,094.91
May 21..Paid for painting and decorating in court house . Dec. 23, 1869.. 44,281.16
May 21.. Paid for plastering and mason work in court house. Dec. 11,1869.. 45,444.46
May 27. .Paid for materials and labor in court house......Dec. 24,1869.. 40,870.45
May 28..Paid for materials and labor in court house......Dec. 24,1869.. 43,390.81
May 80. .Paid for materials and labor in court house......Dec. 24,1869.. 40,895.34
June 3. .Paid for materials and labor in court house......Dec. 24, 1869.. 42,942.16
June 3.. Paid for repairs and materials in county buildings
and offices...............................Nov. 29, 1869.. 41,399.63
June 3. .Paid for repairs and materials in county buildings
and offices...............................Nov. 26, 1869... 41,180.43
June 6. .Paid for labor and materials in court house.....Dec. 16, 1869.. 41,563.42
June 6. .Paid for labor and materials in court house......Dec. 24, 1869.. 40,971.15
June 6. .Paid for labor and materials in court house......Dec. 24, 1869.. 40,652.43
June 6. .Paid for labor and materials in court house......Dec. 24,1869.. 43,774.26
And deponent further shows, on information and belief, that some of said payments were made out of the said last-mentioned appropriation of six hundred thousand dollars, and some of them out of the previous appropriations hereinbefore mentioned, and that, as deponent is informed and believes, the amounts of said payments are very largely in excess of the amounts to which the said Garvey was entitled for the labor and materials furnished by him to said court house, and that bills for the amounts of said payments, or some of them, were not presented, audited, and allowed in the manner required by law, and that said payments, or some of them, were made by the said comptroller without the proper vouchers therefor, and in violation of law.
By an act of the legislature, passed April 19, 1871, there was authorized to be appropriated for the completion of the said court house the sum of seven hundred and fifty thousand dollars, to be expended under the direction' and supervision of the said commissioners, and it was further provided that the comptroller *83 should, on requisition of the said commissioners, pay-over to their credit such sum or sums as they may from time to time deem necessary for such purpose, and the said comptroller was authorized by said act to raise said amount on the stock of the county of New York.
The relator and affiant is informed and believes, since the passage of said act, the said comptroller has raised said amount as in and by said act directed, and has received the said amount for the purpose mentioned in the act, and that all of said amount remains in the hands of the comptroller unexpended, except about the sum of two hundred thousand dollars, which has been placed to the credit of the said commissioners by said comptroller, and the. whole of which last-mentioned sum of two hundred thousand dollars, or a large part thereof, remains in the hands of said commissioners unexpended.
On July 11, 1871, the relator and affiant caused to be served upon the said commissioners a demand duly verified (a copy of which is annexed to the affidavit) to the effect that the said commissioners make a requisition upon the comptroller for the payment by the comptroller to the relator and affiant, as the surviving partner of the firm of J. B. & W. W. Cornell, of the balance of the bill allowed and audited, as aforesaid, on July 5, 1869. From the copy of the demand on the commissioners, annexed to the affidavit of the relator and his affidavit, it appears that such demand was in the form of a notice in writing addressed to the said commissioners, individually by name as such commissioners ; that annexed to said notice and referred to therein, as thus annexed, was a copy of the said bill for work, and so audited and allowed by the board of supervisors on July 5, 1869, and that said notice or demand was to the effect that the original of said bill was on file in the office of the comptroller ; that said' *84 bill had been audited and allowed by the board of supervisors as aforesaid ; that the action of the board of supervisors had been approved subsequently by the Hon. A. Oakey Hall, the mayor of the city of Hew York, as appeared from the certificate of the clerk of the board of supervisors ; that the bill was subsequently examined by James Watson, the county auditor, and found correct, as appeared by his indorsement on the original bill in the office of the comptroller; that on December 6, 1869, thirty-two thousand seven hundred and ninety-nine dollars and fifty-nine cents had been paid by the comptroller on account of the bill; that there was due and owing upon the bill at the time of said payment, sixty-five thousand five hundred and ninety-nine dollars and eighteen cents, with interest thereon to December 6, 1869, amounting to one thousand nine hundred and twenty-five dollars and seven' cents, making an aggregate sum of sixty-seven thousand five hundred and twenty-five dollars and seven cents; that after deducting from said aggregate sum the payment of thirty-two thousand seven hundred and ninety-nine dollars and fifty-nine cents, there remained due and unpaid on account of said bill the sum of thirty-four thousand seven hundred and twenty-five dollars and forty-eight cents; that the firm of J. B. & W. W. Cornell, at the time the contract for the work, labor, and materials mentioned in the bill was executed, and the work, labor, and materials performed and furnished, was composed of John B. and William W. Cornell; that the said William W. Cornell died on March 17, 1870, find that thereupon the said John B. Cornell (the relator and affiant) remained the surviving partner of the firm, and that therefore the said John B„ Cornell, as such‘surviving partner, demanded of the said commissioners that they, as such commissioners, make a requisition on the comptroller of the city and county of Hew *85 York for the payment by the comptroller to the said John B. Cornell of the sum of thirty-four thousand seven hundred and twenty-five dollars and forty-eight cents, with interest thereon from December 6, 1869.
It further appears, from the affidavit of the relator and affiant, that - copies of all the papers referred to in the said demand or notice were annexed to said demand or notice. Subsequently the relator and affiant, on learning that two hundred thousand dollars or thereabout had been placed to the credit of the commissioners on or about July 18, 1871, caused a further demand to be served on the commissioners (a copy of which is annexed to the affidavit), that they pay to the relator and affiant the amount of the balance of the said bill audited and allowed as aforesaid, on July 5, 1869. On July 20, 1871, the relator and affiant caused to be served upon the comptroller a demand (a copy of which is annexed to the affidavit) to the effect that the comptroller pay to the relator and affiant, as surviving partner of the firm of J. B. & W. W. Cornell, the balance of said bill as audited.
None of the said demands have been complied with, and no part of the balance of said bill has been paid, but the whole amount thereof remains due and owing to the relator and affiant as such surviving partner, as aforesaid, to wit: the sum of thirty-four thousand seven hundred and twenty-five dollars and forty-eight cents, with interest thereon from December 6,1869.
In answer to this case made by the affidavit of the relator, Mr. O’ Grorman, corporation counsel, read two affidavits of the comptroller, one purporting to have been verified on August 14, 1871, and the other purporting to have been verified on August 16, 1871.
In and by the first, the comptroller says in "substance and effect, that he lias no funds legally applicable to the payment of the claim of the relator, and in words says further, that all the moneys authorized by the *86 legislature to be raised from time to time, for the purpose of said new county court house, have been expended in accordance with the statute made therein, save as hereinafter mentioned that the only funds remaining in the county treasury, legally applicable to the payment of the liabilities incurred in the erection of said court house, are those authorized and directed to be raised for that purpose by the legislature of 1871; and that deponent further avers that no payments for or on account of said court house have been- made by him, unless in accordance with law, as he is advised.
In and by the other affidavit of the comptroller, purporting to have been verified on August 16, 1871, the comptroller says in words, that there is no money in the city or county treasury of New York, applicable to, or appropriated for, the payment of the claims of the relator herein, or for the payment of any other claim or claims for work done, or materials furnished upon or in the construction of the new county court house therein ; and by Laws of 1871, cli. 583, § 11, the deponent is authorized to issue stock of the value or amount of seven hundred and fifty thousand dollars for the completion of the said court house; that he has not issued, or caused to be issued, the said stock, or any part thereof; that all sums of money heretofore issued, or appropriated for the construction of said court house are and have been expended.
In answer to the case made by the relator’s affidavit, Mr. Ambrose Monell, for the commissioners, reads two affidavits, one of Thomas Coman, one of the respondents and commissioners, purporting to have been verified on August 15, 1871, to the effect that, since the appointment of the said commissioners, the relator had never presented the bill referred to in his affidavit to the said commissioners for audit, and that the same had not been approved and audited by the commis *87 sioners, and stating further in words that he is informed and believes that the said bill of. the relator is grossly extravagant, both as to the amount of materials alleged to have been furnished, and the price charged therefor, and in deponent’s judgment it is highly important that the said bill should be presented to the said commissioners for audit before being paid.
The other affidavit, read by Mr. Monell for the commissioners, by James H. Ingersoll, another of the commissioners and respondents, purporting to have been verified August 15, 1871, states that no part of the two hundred thousand dollars stated in the affidavit of the relator to have been received by the commissioners is remaining in their hands, but the whole of said two hundred thousand dollars had been expended by said commissioners in the purchase of materials and in payment for work done on said court house since their appointment as commissioners thereof.
Having- stated the case made by the papers on both sides, and the only papers before me on this application (three several motions on three several notices on one and the same affidavit having been heard together, and treated as one motion), I will briefly state my conclusions :
1. The bill of the relator having been certified and verified by the superintendent of the court house, and having been audited and allowed by the board of supervisors, and approved by the mayor, and audited and certified to be correct by Watson, the county auditor, and paid in part by the comptroller, and the relator swearing positively that all the items in it are correct, and were actually furnished and delivered under and in accordance with the contract, and that the prices charged are the prices to be paid therefor by the contract—I do not think that the general allegation on information and belief in the affidavit of Mr. Coman, one of the respondents, and one of the commissioners, *88 that the bill is grossly extravagant, would justify me in entertaining a doubt that the bill was and is honest, and just and correct, and that the balance due on it, with interest on such balance from the time of the payment on account thereof by the comptroller, ought to be paid by some one or from some source.
2. Considering that the very general allegations of the relator in his affidavit, to the effect that payments had been made by the comptroller out of the six hundred thousand dollars raised under the act of April 26, 1870, without proper vouchers, and in violation of law, and that certain specified payments had been made to Garvey, out of said six hundred thousand dollars, and out of previous appropriations, largely in excess of what Garvey was entitled to, and that some of said payments to Garvey were made without the proper vouchers, and in violation of law, are made on information and belief merely; and considering that the comptroller by his affidavit, purporting to have been verified on August 14, 1871, swears positively to the effect that he has no funds legally applicable to the payment of the relator’s claims, and that all the moneys which had been authorized to be raised for the new county court house had been expended “in accordance with the statutes made therein, save only funds remaining in the county treasury,” authorized and directed to be raised by the legislature of 1871, and that no payment for or on account of said court house had been made by him, unless in accordance with law, as he is adyised ;—I do not think that I.can or ought to issue a mandamus commanding the comptroller to pay the relator’s claim generally, or on the theory that he has funds applicable to the payment of the relator’s claims raised under or appropriated by any act or acts of the legislature, passed prior to the act of April 19, 1871 {Laws of 1871, ch. 583).
3. In view of the positive affidavit of the respond *89 ent and commissioner Ingersoll, to the effect that, all of the two hundred thousand dollars, stated in the affidavit of the relator to have been paid to the commissioners, or passed to their credit by the comptroller, had been expended, I think I cannot and ought not to issue a mandamus to the commissioners, commanding them to pay the relator’s claim out of the said two hundred thousand dollars.
4. The relator in his affidavit says, on information and belief, that two hundred thousand dollars, directed to be raised for the court house by the act of 1871, had been paid by the comptroller to the commissioners. Commissioner and respondent Ingersoll admits by his affidavit that the commissioners have received the two hundred thousand dollars from the comptroller, and says that they have expended the whole of it. The comptroller says in one of his affidavits (the last) that he has not issued or caused to be issued the seven hundred and fifty thousand dollars of stock, authorized to be issued by the act of 1871. He does not deny that he has paid to or placed to the credit of the commissioners the two hundred thousand dollars. I must assume that the comptroller advanced from some fund, from some source, the two hundred thousand dollars, in anticipation of issue of stock under the act of 1871. By section 7 (not 11) of the act of 1871, seven hundred and fifty thousand dollars is authorized to be appropriated, to be expended under the direction and supervision of the commissioners for the completion of the court house, and the same section directs the comptroller, on requisition of the commissioners, to pay over to their credit such sum or sums as they may from time to time deem necessary for said purposes, and by the same section the comptroller is authorized and directed to raise said amount (seven hundred and fifty thousand dollars) on the stock of the county of *90 Hew York, to be of the usual form, and payable ■within twenty-five years from its issue.
In view of my conclusions on other points of the case, made by the papers, the only remaining question is, ought the court by mandamus to direct the comptroller to raise the seven hundred and fifty thousand dollars which he is authorized and directed to raise in ' or by section 7 of the act of 1871, in the manner therein directed and authorized, or sufficient of that sum or amount to pay the relator’s claim, and, when raised, either to pay the claim himself, or to pay-oyer to the commissioners on their requisition, to be applied to the payment of the claim by them, an amount or sum sufficient to pay it; and ought the commissioners, by. the mandamus, to be directed to make-their requisition on the comptroller to pay the claim, or for the comptroller to pay over to them an amount or sum sufficient to satisfy the claim %
I have carefully considered the elaborate and able brief of Mr. O’Gforman, mainly on this point (and I really think it may be considered as really the only question on the case- made by the papers), and without pretending that the question is entirely free from doubt, yet I have come to the conclusion that it is the duty of the court, on the case made by the papers, to try to secure by mandamus the payment of the relator’s claim out of the seven hundred and fifty thousand dollars authorized and directed to be raised in and by section 7 of the act of 1871, and that on the settlement of the order for a mandamus for such purpose, and of the form of the writ, the order and writ should be so worded as most likely and properly to secure such a result.
I think that so much of the seven hundred and fifty thousand dollars as shall have been used in paying the relator’s claim may fairly have been said to have been expended for or in the completion of the *91 court house. ■ I cannot believe that the legislature intended that a building for the administration of justice should be completed, or considered as completed, until the honest and just debts incurred in the erection and completion had been paid or provided for.
Without ever adverting to many of the considerations which have led me, under the circumstances of the case, to put a construction on section 7 of the act of 1871, which will permit a mandamus to issue in the best form to secure payment of the relator’s claim out of the seven hundred and fifty thousand dollars authorized and directed to be raised by the comptroller in and by that section, I will say that the controlling consideration has been that I cannot see any grounds for doubting that the claim is honest, and just, and correct; and that I cannot see that the relator has any remedy by action against .the board of supervisors, or city corporation, or any body, or person or persons.
I see no way in which the relator can enforce payment except by mandamus from or out of the seven hundred and fifty thousand dollars authorized and directed to be raised by section 7 of the act of 1871. The biR of the relator having been audited and allowed by the board of supervisors, and approved by the mayor, and audited and pronounced correct by the auditor, and paid in part by the comptroller, I do not think the relator was called upon, or bound to present it, or the balance due on .it, to the commissioners for a réauditing by them.
Let the form of the order, and of the mandamus to be made and issued according to the opinion, be drawn by the counsel for the relator, or one of them, and settled on notice.

Note.—An order for the issuing of a writ of mandamus to the commissioners to compel them to make their requisition on the comptroller, was accordingly issued in the following form: